(Superior Court of Cincinnati)
General Term.

## STEINBOCK & PATRICK, A PARTNERSHIP, v. COVINGTON & CINCINNATI BRIDGE COMPANY AND OTHERS.

---

*Owner and contractor—Removal of dangerous walls—*

Where it does not appear affirmatively that a bill of exceptions was submitted to opposing counsel for examination not less than ten days before the expiration of the fifty days limit, it will be presumed, in the absence of a showing to the contrary, that such was the fact, and that the judge, therefore, acted within the scope of his authority in allowing and signing it.

Where the walls of a building have become dangerous, and a contractor is employed to remove them, the owner is liable for the acts of the contractor as in the case of master and servant.

Where such walls are cracked and weakened and are a menace to persons and property in the vicinity, the owner is bound to exercise a very high degree of care in removing them; and in the case at bar, the facts bringing the case within the scintilla rule at least, the question of negligence should have been submitted to the jury.

---

JACKSON, J.; HUNT and SMITH, JJ.,

The first question presented for our consideration in this case, is as to the validity of the bill of exceptions. The defendant in error, The Covington Cincinnati Bridge Company, contend that we can not consider the bill of exceptions as a part of the record for the reason that it does not appear affirmatively that it was submitted to the opposite counsel for examination, as provided in sec. 5302, Rev. Stats. of Ohio.

The provision of this section in this respect, is as follows:

"Provided that where exceptions are not allowed and signed during the progress of the trial, the party excepting shall submit the bill of exceptions to the opposite counsel for examination not less than ten days before the expiration of said fifty days."

It is insisted that a bill of exceptions must affirmatively show a compliance with his provision of the statute; and in support of such contention the defendant in error relies upon the case of Gibb v. Townsend, (9 C. C. Reps., p. 409.) In this case, Judge Scribner says, (p. 411:)

"Here is a case, then, in which the record shows that the bill was presented to the court on the 42nd day after the overruling of a motion for a new trial. This, the court holds, is not within the time, unless the opposite counsel consent to the using of a part of the ten days—of the last ten days of the fifty days—for examination of the bill. The rule is very strictly applied by the supreme court in that case. The record here fails to show us whether or not the opposite counsel was consenting to the use of any part of the last ten days of the fifty days for the purpose of examining the bill of exceptions. The record is entirely silent upon this point, and a strict regard to the ruling made by the supreme court, in the absence of anything in the record tending to excuse the delay, would seem ot require us to regard the bill of exceptions as not having been filed in time."

We are inclined to regard this case as an authority in favor of the position of the defendant in error. But it will be observed that Judge Scribner does not base his decision upon this point alone, but proceeds to consider the case as if the bill of exceptions was properly before the court. Nor do we think that the case of Pugh v. State, (51 Ohio. St., 116,) which is cited and relied upon by the court in the case of Gibbs v. Townsend, is authority for the proposition that the bill must show affirmatively that it was submitted to opposite counsel ten days before the expiratiton of the fifty days. On the contrary, in the case of Pugh v. State, it appeared affirmatively that the bill was not submitted to opposite counsel within such time. There the court granted an extension of ten days after the expiration of fifty days from the overruling of the motion for a new trial; the bill was not submitted to opposite counsel until after the extension, and it was held that such power of extension for ten days was intended merely for the convenience of the judge, and was not intended to authorize such extension for the purpose of submitting the bill to opposite counsel. This case, and also the case of Nuerman v. Becker, (54 Ohio St., 323), seem to hold that the submitting of the bill to opposite counsel within the time specified, is necessary to confer authority upon the judge to sign and allow the same; that without such compliance, the judge has lost jurisdiction over the subject matter. We therefore think the better rule is, that in the absence of a showing to the contrary, it will not be presumed that the judge acted without authority, but that he must be presumed to have acted within the scope of his authority. This seems to have been the view taken by the supreme court in the case of Hiddleson v. Hendricks, (49 Ohio St., 297,) in which case it was held:

"Where the record of the trial court shows the allowance of forty days after the term at which judgment was rendered for the presentation and filing of a bill of exceptions, and the due allowance, signing and filing of the same within the forty days,

is also shown by the record and by the bill itself, evidence will not be heard in this court to show that the bill was not presented to the opposite counsel ten days before the expiration of the forty days, or to the judge, five days prior thereto. The record imports absolute verity, and can not be impeached by evidence aliunde, tending to show that the requirements of the statute were not complied with."

It is worthy of notice that the act itself does not require that the submission to opposite counsel must appear on the face of the bill; but it does require that an extension of ten days by the trial judge must appear on the bill. The exact point seems to have been decided in the case of Young. v. Shalleuberger, ( 53 Ohio St..p . 298, ) in which the court said:

"No complaint is made in this case that the bill was not submitted in due time to opposite counsel or to the trial judge, and the record fails to show any default in that regard. In the absence of such showing, compliance with the statute in that respect will be presumed from the allowance and signing of the bill."

The bill of exceptions being properly before us, we therefore proceed to consider whether or not there was error on the part of the court below in directing a verdict for the defendant.

The facts, briefly stated, are: The Covington & Cincinnati Bridge Company was the owner of a certain building, situated at the south west corner of Neff alley and Second street, in Cincinnati, which building was destroyed by fire on August 24, 1895. The walls of the building were left standing, and by reason of their damaged and weakened condition, they became unsafe, and were dangerous to persons and property in that vicinity. The company was notified of the dangerous condition of the walls by a private party and also by a communication from the city authorities. On December 14, 1895, the company let the work of tearing down the walls to one Hasler; on January 6, 1896, while the men employed by Hasler were engaged in tearing down the east wall of the building, a portion of this wall fell over and upon the building occupied by plaintiff, resulting in serious damage to the business and property of plaintiff. It is claimed that the wall being in a very dangerous condition. defendants were bound to the exercise of a high degree of care in tearing down the same; that they were wanting in the exercise of such care, and that they are liable to plaintiff for the consequent injury.

It is not contended that defendant was negligent in the selection of an incompetent person to do the work. The court below directed a verdict for the defendant; and two questions are therefore presented:

First. Is the company liable for the acts of Hasler as in the case of master and servant, or was it relieved from all responsibility by the employment of an independent contractor?

Second. If liable for the acts of Hasler, were there any acts tending to show negligence which should have been submitted to the jury?

We think the company was not relieved from responsibility by the employment of Hasler to do this work, for two reasons:

First. The work of tearing down this particular wall was necessarily dangerous and the damage was a direct result of the performance of such dangerous work which Hasler was employed to do. It was not the result of any acts of Hasler collateral to the objects of his employment.

Second. The condition of the wall was such that it became a nuisance, and defendant was therefore under a legal duty or obligation to remove the same, and it could not therefore delegate the work to an independent contractor so as to release itself from liability. That the defense of an independent contractor fails under either of such circumstances, we think is fully sustained by the weight of authorities and by the supreme court of this state in City of Circleville v. Neuding, (41 Ohio St., 465,) and Railroad Company v. Morey, (47 Ohio St., 207.

In the first of these cases it was said:

"The relation between the city and Brandt was clearly that of employer and independent contractor; and the rule is generally that for injuries occurring in the progress of the work carried on by the parties in that relation, the contractor alone is liable. But this liability is limited to those injuries which are collateral to the work to be performed, and which arise from the negligence or wrongful act of the contractor or his agents or servants. Where, however, the work to be performed is necessarily dangerous, or the obligation rests upon the employer to keep the subject of the work in safe condition, the rule has no application."

So in Railroad v. Morey, (47 Ohio St., 207,) the court, speaking of the defense of independent contractors, says:

"But this principle has no application where a resulting injury, instead of being collateral and flowing from the negligent act of the employe alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance. In such case the person causing the work to be done will be liable, though the negligence is that of an employe of an independent contractor."

The case of Conners v. Hennessey, (112 Mass.,96, ) defendant in error, is clearly distinguishable from the case at bar. That was a case where the owner of a building let to an independent contractor the work of raising a house, but it nowhere appears that the work of raising this house was necessarily attended with danger to others, as in the case in tearing down of this wall, or that the condition of the house was such it became a nuisance, and that then the

owner was under any legal obligations to have the house raised.

We are therefore of the opinion that the defendant is liable if the injury was a result of any negligence on the part of the contractor or his servants or agents.

Coming then to the second question presented, we think the facts bring the case within the scintilla rule, to say the least, and that the question of negligence should have been left to the jury. We will not attempt to review all the evidence. It is sufficient to state that the record shows that the wall was cracked and weakened, and was a menace to the safety of persons and property in that vicinity. Under the circumstances, the defendant was bound to the exercise of a very high degree of care. The east wall about the center had bulged out and was leaning over in the direction of plaintiff's store; the defendants attempted to tear it down by a rope or pulley, without taking any precaution to prevent that part of the wall which was leaning eastward from falling in that direction. There is some evidence tending to show that the foreman of the work was told by some one that the method he was employing was not safe, and that the wall should be taken down by erecting a scaffold and by the use of picks, and that the foreman stated that his object in using a rope or pulley was to save time and material. Under the circumstances, the case should have gone to the jury.

The judgment is therefore reversed, and the case remanded for a new trial.

Symmes & Fox, for plaintiff in error.

Ramsey, Maxwell & Ramsey, for the Bridge Company.